UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA DAWSON,<br><br>                     Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                     Defendant. | NO. C11-817-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Pamela Dawson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1961, and was 44 years old on the date her application was filed. Administrative Record ("AR") at 33. She has a high school education. AR at 147. Her past

REPORT AND RECOMMENDATION - 1

work experience includes employment as an apartment manager. AR at 102, 144. Plaintiff was last gainfully employed on December 31, 2000. AR at 142.

On June 15, 2005, plaintiff filed a claim for SSI, alleging disability beginning August 15, 1992. AR at 19. Plaintiff asserts she is disabled due to reflex sympathetic dystrophy, causalgia, bipolar/depression, hepatitis B and C, personality disorder, and post traumatic stress disorder ("PTSD"). AR at 142.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 84-85, 88-91. Plaintiff requested a hearing which took place on May 14, 2008. AR at 747-83. A supplemental hearing was held on January 8, 2009. AR at 725-46. On March 2, 2009, the ALJ issued a decision finding plaintiff not disabled. AR at 19-34. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 13, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Dawson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any

other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 2, 2009, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since June 15, 2005, the application date.

2. The claimant has the following severe impairments: post traumatic stress disorder, depression, low back pain, and personality disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to: lift/carry 20 pounds occasionally, and 10 pounds frequently, subject to use of her cane; sit, stand, and/or walk without restriction, except that the claimant uses a cane for ambulation; traverse any surface possible given her cane usage; understand, remember, and follow one or two step instructions or tasks, and, while she also retains the ability to understand, remember, and follow more than two step instructions, she could not do this consistently throughout the course of the workday. She can learn new tasks, exercise judgment and perform routinely, consistent with one or two step tasks. Can interact appropriately with co-workers, supervisors, and members of the public. She is able to respond to pressures in the work environment consistent with one or two step tasks. Her ability to care for self, personal hygiene, and appearances is compromised, so she would work best in jobs where she did not have to appear in front of members of the public.

5. The claimant is unable to perform any past relevant work.

|   |   |   |
|---|---|---|
| 1 | 6. | The claimant was born on XXXXX, 1961 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2] |
| 2 |   |   |
| 3 | 7. | The claimant has at least a high school education and is able to communicate in English. |
| 4 |   |   |
| 5 | 8. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. |
| 6 |   |   |
| 7 | 9. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| 8 |   |   |
| 9 | 10. | The claimant has not been under a disability, as defined in the Social Security Act, since June 15, 2005, the date the application was filed. |

AR at 21-34.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in her evaluation of the medical opinions of examining physician Allen Lee, M.D., and treating physician Kathreen Gimbrere, M.D.?

2. Did the ALJ meet her burden at step five to show that plaintiff can perform other work that exists in significant numbers in the national economy?

Dkt. No. 20 at 1.

## VII. DISCUSSION

A. <u>The ALJ erred in her evaluation of the medical opinions of examining physician Allen Lee, M.D., and treating physician Kathreen Gimbrere, M.D.</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; 20

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.2(a).

REPORT AND RECOMMENDATION - 6

C.F.R. § 404.1527(d)(1)-(2). "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041. However, under certain circumstances, a treating or examining physician's opinion can be rejected, whether or not that opinion is contradicted by other medical evidence of record. *Magallanes*, 881 F.2d at 751. The ALJ must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id*. (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state her conclusions. "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id*.

  1. <u>Allen Lee, M.D.</u>

On November 5, 2005, Allen Lee, M.D., performed a consultative psychiatric evaluation of the plaintiff. AR at 346-50. Dr. Lee opined that plaintiff could perform simple and repetitive tasks as well as detailed and complex tasks. AR at 350. He found her ability to accept instructions from supervisors was intact, but that her ability to interact with co-workers may be mildly impaired by her borderline traits. *Id*. He opined that plaintiff's ability to perform activities on a consistent basis, maintain regular attendance in the workplace, and deal with usual stress at work would likely be affected to a moderate degree by her disorders. *Id*.

While the ALJ incorporated most of Dr. Lee's opinions into the RFC assessment, she rejected Dr. Lee's opinion that plaintiff would have moderate limitations in her ability to perform

REPORT AND RECOMMENDATION - 7

activities on a consistent basis and maintain regular attendance. AR at 31. The ALJ found that "given the claimant's adherence to her recent vigorous mental health treatment regime, I do not find this limitation an accurate portrayal of the claimant's abilities when motivated." *Id*. The ALJ noted that beginning in November 2008, plaintiff "presented to a methadone clinic, via public transportation, six days per week. At the time of the hearing, she was also participating in a vigorous mental health regime, including commitment to four groups, medication management appointments, and individual therapy." AR at 28, 23, 24, 734, 740, 753. The ALJ found that although plaintiff alleged that she missed some appointments, her ability to make even a portion of these appointments, follow a bus time table, and endure a 45 minute bus trip each way belied her allegations of extreme dysfunction. AR at 28-29.

Plaintiff argues that the ALJ's reason for rejecting Dr. Lee's opinion is not supported by substantial evidence. Dkt. No. 20 at 13. She contends that although plaintiff had a great number of appointments while undergoing treatment at Therapeutic Health Services ("THS") – including case management, chemical dependency groups, agonist therapy, monthly medication management, and chemical dependency counseling – there is no evidence that she was adherent to her treatment regime. Plaintiff points out there are virtually no notes from THS, so there is no actual documentation of compliance. AR at 691-709. Rather, plaintiff testified that although she had been fairly compliant with treatment, she continued to miss approximately one appointment per week. AR at 740. The vocational expert testified that if an individual missed work once a week or once every other week it would be unlikely that she could maintain employment. AR at 742.

The Commissioner argues that even if plaintiff's testimony about missing some days is credited, the ALJ's interpretation of the evidence remains reasonable. Dkt. No. 21 at 7. He

asserts that the ALJ rejected Dr. Lee's opinion "not only because Plaintiff was able to attend a rigorous treatment regimen, but also because Plaintiff's condition improved with treatment." *Id*. However, the ALJ did not reject Dr. Lee's opinion because "Plaintiff's condition improved with treatment." The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

The Court agrees with plaintiff that there is no evidence that plaintiff was able to adhere to her recent mental health treatment regime. Accordingly, the ALJ's reason for rejecting Dr. Lee's opinion is not specific and legitimate and supported by substantial evidence.

### 2. Kathreen Gimbrere, M.D.

Kathreen Gimbrere, M.D., was plaintiff's treating psychiatrist through the Harborview Medical Center Healthcare for the Homeless program. On January 31, 2006, Dr. Gimbrere completed a Washington State Department of Social and Health Services ("DSHS") psychiatric evaluation. AR at 620- 23. She opined that plaintiff's PTSD, depression, borderline personality disorder ("BPD"), and polysubstance dependence caused several "marked" and "severe" limitations in her cognitive functioning, including "marked" limitations in her ability to understand, remember, and follow complex tasks, and learn new tasks. AR at 622. In addition, she opined that plaintiff had "severe" limitations in her ability to exercise judgment and make decisions. *Id*. As the basis for these limitations, Dr. Gimbrere stated plaintiff had "[c]ognitive impairments related to PTSD & BPD." *Id*. Dr. Gimbrere also stated that plaintiff exhibited "impaired judgment," "poor decision making," "very poor coping skills," and was "in need of DBT [dialectical behavior therapy] to improve these skills." *Id*.

1   Under "social factors," Dr. Gimbrere opined that plaintiff had "marked" limitations in her ability to interact appropriately with public contacts, and "severe" limitations in her ability to relate appropriately to co-workers and supervisors, and to respond appropriately to and tolerate the pressure and expectations of a normal work setting. *Id*. As the basis for these limitations, Dr. Gimbrere noted "[e]xtremely poor work history – last job in [the] 80's, long history of homelessness, dysfunctional lifestyle, poor social skills [and] poor impulse control." *Id*.

The ALJ rejected Dr. Gimbrere's opinion that plaintiff had marked and severe cognitive limitations because "she gave no specific justification for such severe limitations, listing only 'cognitive impairments related to PTSD & BPD." AR at 32. The ALJ stated that Dr. Gimbrere "discussed no testing or specific examples which would explain her checked boxes." *Id*. The ALJ noted, "It is well settled law that check-off reports that do not contain explanation of the reasons for their conclusions may permissibly be discounted." *Id*.

The ALJ also rejected Dr. Gimbrere's opinion that plaintiff had marked and severe social limitations stating,

> In a failed attempt to explain this, she noted and [sic] "extremely poor work history," long history of homelessness, dysfunctional lifestyle, which are not relevant to this evaluation. She further noted poor social skills and poor impulse control, yet, as discussed above, when motivated, the claimant demonstrates adequate social skills and impulse control. As such, I did not find this opinion particularly persuasive.

AR at 32. The ALJ's reasons do not have merit.

Plaintiff received treatment through the Healthcare for the Homeless program at Harborview Medical Center from 2003 to 2007, including treatment from Dr. Gimbrere beginning in 2005. A significant number of medical reports from Dr. Gimbrere are included in the record. AR at 383-402, 565-96. These reports show that Dr. Gimbrere repeatedly found on mental status examination that plaintiff had ongoing problems with thinking and judgment. AR

REPORT AND RECOMMENDATION - 10

at 383, 386, 390, 395, 399, 401, 566, 573, 577, 582, 585, 589.  Her opinions contained in the DSHS evaluation, therefore, cannot be rejected as simply check-box forms.  Moreover, Dr. Gimbrere did more than merely check boxes; rather, she provided additional information and comments that explained the basis for her opinions.  In completing the DSHS form, Dr. Gimbrere stated that plaintiff's PTSD and BPD caused significant cognitive problems as demonstrated by her impaired judgment, poor decision making, and very poor coping skills.  Because Dr. Gimbrere provided explanations on her DSHS evaluation which were supported by her mental status examinations, the ALJ erred by rejecting them.

However, the ALJ's reason for rejecting Dr. Gimbrere's social limitations, that they are inconsistent with plaintiff's demonstrated social skills and impulse control, is supported by substantial evidence.  As the ALJ pointed out in the decision, Dr. Lee indicated that plaintiff was able to interact successfully with others, as evidenced by her ability to interact with the staff and maintain social cues while in the interview.  AR at 23, 29, 31, 349.  In addition, the ALJ indicated plaintiff had no problems with social interactions, noting plaintiff used public transportation, used shelters, engaged in prostitution, sold marijuana, and allowed people into her home.  AR at 29.  "When hospitalized, the claimant was specifically noted to have 'started a conversation with anyone.'"  *Id*.  The ALJ also found evidence that when motivated, plaintiff demonstrated impulse control as evidenced by her abstinence from drugs and compliance with the THS methadone treatment program.  AR at 31-32.  The ALJ provided specific and legitimate reasons for rejecting Dr. Gimbrere's opinion regarding plaintiff's social limitations.

When an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  However, courts retain flexibility in applying the credit as true theory.

REPORT AND RECOMMENDATION - 11

*Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further determinations. *Id.* Here, Dr. Gimbrere's opinions do not definitively establish that plaintiff is disabled. Accordingly, remand for further consideration of these opinions is appropriate.

      B.      <u>Remand is necessary for consideration of the medical opinion evidence and further findings at Step Five</u>.

Finally, plaintiff argues that the ALJ erred at step five because the hypothetical she posed to the vocational expert did not include all of plaintiff's limitations and restrictions. Dkt. No. 20 at 19. Because the Court recommends remand for further consideration of Dr. Gimbrere's opinion in determining plaintiff's RFC, the ALJ will necessarily have to conduct a new step five analysis that incorporates any changes in plaintiff's RFC. In doing so, the ALJ should incorporate all of plaintiff's limitations and restrictions that are supported by substantial evidence in posing a hypothetical to a vocational expert.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 24th day of January, 2012.

                                    /s/ James P. Donohue

                                  JAMES P. DONOHUE
                                  United States Magistrate Judge